UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

CIVIL ACTION NO. 07-02

CATHY G. COX                                          PLAINTIFF

VS.                    MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY                       DEFENDANT


This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 16) and the cross-motion for summary judgment of the defendant (Doc. 17).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that she is disabled within the meaning of the Social

1

Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. pt. 404, subpt. P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant

2

work.  Id.  Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy.  Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, claimant was forty-six years old and had a high school education and some college.  In addition, she has had vocational training as an electronics instrumentation technician and also as a certified nursing assistant.  Claimant has prior relevant work experience as a waitress, paper carrier, photo technician, pre-loader, and packager.

The claimant alleges she has been disabled since November 11, 2003 due to pain in her neck, shoulders and back, headaches, carpal tunnel syndrome, and possible tennis elbow.  In 1997, The claimant suffered a low back work-related injury as a truck loader with UPS resulting in a herniated disc at L1-2.  At that time, she also had several disks beginning to bulge at the L3-4 and L4-5.

In August 2003, the claimant was involved in a motor vehicle accident resulting in three bulging disks at the C4-5 through C6-7 levels.  She also suffers from a bilateral moderate to severe hearing loss for which she wears hearing aids.

At the supplemental hearing on this application, the ALJ sought testimony from the claimant and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite five-step evaluation for determining disability.

At step one, the ALJ determined that claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the claimant's carpal tunnel syndrome and chronic cervical/lumbar strain are severe impairments.

At step 3, the ALJ determined that, although claimant has impairments that are "severe," she does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. pt. 404, subpt. P, appendix 1.

At step 4, the ALJ found that the claimant could not perform her prior relevant work experience and, therefore, moved to step five. At step 5, the ALJ found that the claimant has a residual functional capacity to perform a range of light work but that she cannot perform jobs requiring grasping, pushing, pulling or fine manipulation. She also has limited foot movement, cannot work at unprotected heights and should not be exposed to dust, fumes or gases. The ALJ asked the vocational expert whether there were any jobs in the economy that a person could perform who was claimant's age and had the same education and work history as the claimant, and who can perform light work with the limitations that she has, difficulty grasping, pushing and pulling, and performing fine-motor manipulation and cannot work at unprotected

4

heights or around dust and fumes.  The vocational expert opined that, given the limitations posed by the ALJ, a significant number of jobs existed in the national economy that such a claimant could perform, including, at the light level, watch-guard/gatekeeper (19,000 jobs in the region and 300,000 jobs nationally), house-sitter/companion (11,000 jobs in the region and 146,000 jobs nationally), and, at the sedentary level, dispatcher (6,500 jobs in the region and 102,000 jobs nationally) and security monitor (6,400 jobs in the region and 117,000 jobs nationally).  Based on this testimony, the ALJ found that the claimant was not disabled.

The claimant argues that the ALJ erred at step two by not finding her hearing loss and depressed mood disorder to be severe impairments.  The ALJ, however, found that claimant's carpal tunnel syndrome and chronic cervical/lumbar strain were severe impairments.  Upon finding some severe impairments, the ALJ determined that the claimant had met step two of the sequential evaluation and continued on to the next step of the analysis.

The fact that the ALJ found some of claimant's impairments non-severe is legally irrelevant because the ALJ did find the claimant met her burden at step two.  Anthony v. Astrue, No. 07-3344, 2008 WL 508008, *5 (6th Cir. Feb. 22, 2008); Fisk v. Astrue, No. 06-4677, 2007 WL 3325869 *4 (6th Cir. Nov. 9, 2007); Riepen v. Commissioner of Social Security, 198 Fed. Appx 414, 415 (6th Cir. 2006); Mariaz v. Sec'y of Health 7 Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).  Thus, any error at this step is

5

harmless, since the ALJ continued on with the analysis.  Id.

The claimant also argues that the ALJ erred at step three in the analysis because he considered claimant's impairments separately under the listings and did not consider whether the combined effects caused by all of her impairments met any of the listings.  The ALJ recognized that both claimant's carpal tunnel syndrome and chronic cervical/lumbar strain are severe impairments, and stated:

> The claimant has herniations of the cervical and lumbar spine (Exhibits 1F, 6F, 18F, and 24F).  Neurological examination in March 2004 showed a positive straight leg raise on the left with lumbo-sacral spasm and some tenderness in the left sacro-iliac joint (Exhibit 6F).  However, the rest of her neurological examination was normal and in January 2005 and May 2005 straight leg raise was negative (Exhibits 6F, 18F).  As the evidence does not show the positive neurological deficits necessary to meet or equal the listings, I find the claimant does not meet a Listing under Section 1.00.
>
> I have also reviewed the claimant's carpal tunnel syndrome [under] Section 11.00.  Section 11.00 requires a description of positive neurological signs with persistent disorganization or deficit of motor function for age involving two extremities, which (despite prescribed therapy) interferes with age-appropriate major daily activities and results in disruption of fine and gross movements or gait and station.  Electromyography in November 2003 was abnormal and findings were consistent with a mild degree of bilateral carpal tunnel syndrome (Exhibit 1F).  The study also showed mild degree of sensory ulnar neuropathy and lower cervical radiculopathy.  However, the claimant testified she tries to do as much as possible during the day, drives, performs household chores, and helps a friend.  She did not complain of dropping things.  Therefore, the claimant's carpal tunnel syndrome does not meet a listing under Section 11.00.

(AR 17-18).

The Social Security Act requires the ALJ to consider the combined effects of impairments.  Foster v. Bowen, 853 F.2d 483,

6

490 (6th Cir. 1988). The ALJ is not required, however, to provide an "elaborate articulation of [his] thought processes," and his decision may indicate, by way of implication, that he considered the combination of claimant's impairments. Gooch v. Secretary of Health & Human Services, 833 F.2d 589, 592 (6th Cir. 1987).

The court finds that the ALJ articulated clear reasons for finding the claimant did not meet the listings. The claimant has not presented any evidence that would support her assertions that her combined impairments equaled either listing. Nor does the claimant articulate what listing she thinks she meets. The claimant has not met her burden of establishing that she meets a listing or that the ALJ erred at step three.

The claimant also argues that the ALJ erred in failing to give controlling weight to her treating physician's medical opinion. The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993). Here, the ALJ stated:

> After a complete review of the medical evidence of record, I give the claimant the benefit of the doubt and find her limited to light work. The State Agency limited the claimant to medium level work. However, I find the claimant's history of degenerative disc disease of the lumbar and cervical spine would eliminate such work. Dr.

7

>  Bansal, on the other hand, limited the claimant to less than
>  a full range of sedentary work.  This is much less
>  restrictive than the claimant testified with regard to her
>  activities of daily living. She testified she tries to do as
>  much as possible, even driving her son to school, taking him
>  to after-school events, and helping a friend.  Dr. Bansal
>  also noted in his treatment notes that he advised the
>  claimant to stay as active as possible and only avoid
>  excessive bending, stooping or lifting.  This is in direct
>  conflict with his residual functional capacity assessment.
>  Therefore, I have given Dr. Bansal's report little weight as
>  they are not consistent with other medical evidence of
>  record.

(AR 21-22).

The court finds that the ALJ's finding that Dr. Bansal's instruction for the claimant to "stay as active as possible" is contradictory to his RFC is not well-founded.  This statement does not provide evidence on what the claimant can still do. Furthermore, the ALJ states that the claimant's activities of daily living contradict a finding that she cannot perform even sedentary work.  However, the activities listed do not involve activity that would exceed the limitations set forth in Dr. Bansal's RFC.  The ALJ did not point to any clinical or laboratory diagnostic techniques that contradicted Dr. Bansal's opinion.  Accordingly, the court finds that the ALJ did not articulate clear reasons for discrediting Dr. Bansal's assessment.

The court is further concerned with the ALJ 's analysis at step four with respect to claimant's pain.  Pain alone, if the result of a medical impairment, may be severe enough to constitute disability.  Kirk v. Secretary of H.H.S., 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).  In

8

order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition.  If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain.  <u>Duncan v. Secretary of H.H.S.</u>, 801 F.2d 847, 852-53 (6th Cir. 1986).  <u>See also</u> <u>Felisky v. Bowen</u>, 35 F.3d 1027, 1038-39 (6th Cir. 1994); <u>Jones v. Secretary of H.H.S.</u>, 945 F.2d 1365, 1369 (6th Cir. 1991).  This test, however, "does not require . . . 'objective evidence of the pain itself.'"  <u>Duncan</u>, 801 F.2d at 853.  Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors, including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians.  <u>Felisky</u>, 35 F.3d at 1039-40.

     Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. <u>King v. Heckler</u>, 742 F.2d 968, 975 (6th Cir. 1984).  Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed

9

by the Court. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. Felisky, 35 F.3d at 1039-41.

Here, the ALJ stated that he found the claimants medically determinable impairments could reasonably be expected to produce the alleged symptoms, but he then discredited the claimant's statements concerning intensity, duration and limiting effects of the symptoms. The court finds the ALJ did not set forth his evaluation of the evidence and how it relates to the factors for evaluating pain in sufficient detail to permit meaningful review. See Felisky, 35 F.3d at 1039-41. Thus, upon remand the ALJ should conduct a detailed analysis on whether plaintiff's pain is of such a degree to be disabling and specifically set forth his analysis in his decision.

The court also finds that the ALJ erred at step five. Specifically, the ALJ failed to incorporate claimant's moderate to severe hearing loss in the hypothetical questions posed to the VE and, therefore, the questions did not accurately portray the claimant's limitations. See Howard v. Commissioner of Social Security, 276 F.3d 235, 239 (6th Cir. 2002).

The ALJ's error is particularly evident in this case because, in response to the ALJ's questioning, the VE stated that a person with the impairments set forth by the ALJ could perform the jobs of guard, gatekeeper, dispatcher and security monitor.

10

These jobs, particularly that of dispatcher, would require a person performing the position to be able to hear information being relayed through a radio, buzzer or other appliance.

Here, the transcript of the administrative hearing indicates that the claimant had difficulty hearing the ALJ who was presumably sitting directly in front of her.  (AR 448-459). Although the claimant's counsel raised the issue to the VE and he opined that her hearing impairment would not alone preclude the claimant from working, the VE admitted that the position of dispatcher would be a "poor choice" for a person with a hearing impairment.  Yet, the ALJ considered this job, as well as other possibly ill-suited positions, in his finding that a sufficient number of jobs exist in the economy that the claimant can perform.

In addition, the ALJ's hypothetical asked the VE to consider that the claimant has **difficulty** grasping, pushing and pulling and fine motor manipulation.  In response, the VE recited jobs in the light and sedentary level.  However, upon cross-examination, the attorney asked the VE to consider Dr. Bansal's RFC.  The VE testified that, based upon the "significant limitations with both upper and lower extremities, with push, pull, with limited reaching, handling, fingering and feeling [] all those conditions would preclude both light and sedentary work."  (AR 469).  In the ALJ's decision, he stated that the claimant could not perform jobs requiring grasping, pushing/pulling or fine manipulation and noted she has limited foot movement.  Yet, he relied on the VE's

11

opinion regarding a person who has difficulty, but is not precluded from, performing these functions. Thus, the court finds the ALJ's conclusion that there are a significant number of jobs the claimant can perform is not supported by substantial evidence.

As explained above, the court finds that the ALJ erred in failing to articulate his pain analysis, discrediting Dr. Bansal's report, and in failing to pose hypothetical questions to the VE that were consistent with the limitations supported by the record. Accordingly, the ALJ's decision is not based on substantial evidence.

Once a court determines that substantial evidence does not support the Commissioner's decision, it can reverse the decision and award benefits only if all essential factual issues have been resolved and the record establishes a claimant is entitled to benefits. Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994). Where, as here, the factual issues have not been resolved, the court shall remand the case for further consideration. Id.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 16) be, and it hereby is, **granted in part** as to plaintiff's request for a reversal of the Commissioner's decision, and **denied in part** as to his request for a court ordered award of benefits; and that the cross-motion for summary judgment of the defendant (Doc. 17) be, and it hereby is, **denied.**

**IT IS FURTHER ORDERED** that this action be, and it is, hereby **remanded** to the Commissioner, pursuant to 42 U.S.C. § 405(g), for further proceedings.

This 21st day of March, 2008.



Signed By:
*William O. Bertelsman* WOB
United States District Judge